# EXHIBIT A

DEPARTMENT OF HEALTH AND HUMAN SERVICES
DEPARTMENTAL APPEALS BOARD
**Medicare Appeals Council**
**Docket No. M-19-1973**

L.S., Appellant
ALJ Appeal Nos. 1-8048536100 & 1-8048583213

## DECISION

The Administrative Law Judge (ALJ) issued two decisions dated April 9, 2019, concluding that Medicare Part B does not cover the continuous glucose monitor (CGM) system (E1399), a MiniMed 630G with Smartguard, furnished to the beneficiary on December 13, 2016, as well as sensors (A9276), furnished on November 16, 2017, and May 15, 2018. The ALJ held the beneficiary financially responsible for the non-covered costs. The beneficiary has asked the Medicare Appeals Council (Council) to review the ALJ's decision.

The Council reviews the ALJ's decisions *de novo*. 42 C.F.R. §§ 405.1100, 405.1108. We admit the beneficiary's request for review, with attachments, into the administrative record as Exhibit (Exh.) MAC-1.

We have carefully considered the request for review, as well as the administrative records. As set forth below, we agree with the ALJ's rationale for non-coverage. Accordingly, we adopt the ALJ's decisions.

## AUTHORITIES

Medicare is a defined benefits program. Section 1832(a)(1) of the Social Security Act (Act) provides that benefits under Medicare Part B include "medical and other health services." Section 1861(s)(6) of the Act defines "medical and other health services" as including durable medical equipment (DME). Section 1861(n) of the Act lists certain items that are classified as DME. However, by its own terms, section 1861(n) is not an exhaustive list of those items that qualify as DME. Thus, the fact that an item is not listed in section 1861(n) does not necessarily mean that it is not DME.

The regulations define DME as equipment that:

- can withstand repeated use;
- has an expected life of at least three years;

6

2

- is primarily and customarily used to serve a medical purpose;
- generally is not useful to an individual in the absence of an illness or injury; and
- is appropriate for use in the home.

42 C.F.R. § 414.202. A device or system which does not comply with all the terms of this definition does not fall within the statutory DME benefit of the Medicare program.

To receive Medicare coverage, a device must first meet the definition of DME, and must also be medically "reasonable and necessary" for the particular beneficiary and in fact be used in the beneficiary's home. Medicare Benefit Policy Manual (MBPM), CMS Pub. 100-02, Ch. 15, § 110. A claim for a device or system which meets the definition of DME would thus only be covered by Medicare when used by a beneficiary for medical purposes.

The CMS Administrator from time to time issues Rulings that serve as precedent final opinions and official statements of agency policy and interpretation. On January 12, 2017, the CMS Administrator issued a Ruling addressing whether any CGM systems constituted DME. The Ruling[1] states:

> The FDA recently approved expanding the indications of one CGM product to include replacement of blood glucose monitors for diabetes treatment decisions. This Ruling addresses whether 'therapeutic' CGMs, which provide information that can be used to make diabetes treatment decisions meet the definition of DME. For the purpose of this Ruling, all CGMs that are approved by the FDA for use as adjunctive devices to complement, not replace, information obtained from blood glucose monitors in making diabetes treatment decisions are referred to as 'non-therapeutic' CGMs.

CMS Ruling 1682-R at 7. The 2017 Ruling further states that such "therapeutic" CGM systems will be considered DME if the *CGM* system is "approved by the FDA *for use in place of a blood monitor for making diabetes treatment decisions*[;]" generally is not useful to the individual in the absence of an illness or injury; is appropriate for use in the home; and includes a durable component. CMS Ruling 1682-R at 13-14 (emphasis added). In all other cases in which a CGM does not replace a blood glucose monitor for making diabetes treatment decisions, a CGM is not considered DME.

CMS issues national coverage determinations (NCDs) to specifically address certain items and services. "An NCD is a determination by the Secretary of whether a particular item or service is covered nationally under Medicare." 42 C.F.R. § 405.1060(a). "NCDs generally outline the conditions for which an item or service is considered to be covered

---

[1] https://www.cms.gov/Regulations-and-Guidance/Guidance/Rulings/Downloads/CMS1682R.pdf (last visited December 15, 2020).

3

(or not covered) under § 1862(a)(1) of the Act or other applicable provisions of the Act." Medicare Program Integrity Manual (MPIM), CMS Pub. 100-08, Ch. 13, § 13.1.1. NCDs are binding on all contractors, ALJs, and the Council. 42 C.F.R. § 405.1060(a)(4).

No NCD addresses whether CGM devices or systems qualify as DME or are covered under Medicare. By contrast, the Act has explicitly included home blood glucose monitors as DME and a current NCD spells out the conditions and limitations under which such monitors and associated supplies may be covered. Act § 1861(n); Medicare NCD Manual, CMS Pub. 100-03, § 40.2 (NCD 40.2). CGM devices do not test or monitor blood glucose; rather, they monitor interstitial fluid for glucose values, a critical distinction we discuss in more detail later. *See* CMS Ruling 1682-R at 6.

A Medicare administrative contractor may issue a local coverage determination (LCD) that "is a decision . . . whether to cover a particular item or service on a [contractor]-wide, intermediary wide or carrier-wide basis in accordance with Section 1862(a)(1)(A) of the [Act] (i.e., a determination as to whether the item or service is reasonable and necessary.)" MPIM, Ch. 13, § 13.1.3. LCDs speak only to whether and in which circumstances an item or service meets the coverage requirement of being medically reasonable and necessary for beneficiaries' conditions.[2] Information that is not related to reasonableness and necessity criteria, including whether an item falls within a benefit category or is governed by a statutory exclusion, is published through an associated policy article. *Id.* LCDs thus would not address whether a device or system falls within the Medicare definition of DME at all, as opposed to whether or when an item of DME is covered under Medicare for use by a beneficiary. ALJs and the Council are not bound by, but are required to give "substantial deference" to, applicable LCDs and other CMS program guidance including program memoranda and manual instructions. 42 C.F.R. § 405.1062(a).

During the period at issue, the relevant DME contractor published two versions of the LCD relating to glucose monitors applicable during the dates of service at issue: L33822 (effective Oct. 1, 2016 and Jan. 12, 2017).[3] Both versions explain that home blood glucose monitors will be considered medically reasonable and necessary for a beneficiary only if (1) the beneficiary has diabetes and (2) is trained to use the home monitor. Additionally, both versions of the LCD specify that payment for any glucose monitor will

---

[2] An LCD may list relevant HCPCS codes to identify products, supplies, and services, including items of DME, being addressed. The HCPCS was developed by CMS for processing, screening, identifying, and paying Medicare claims. 42 C.F.R. § 414.40. HCPCS is not a methodology or system for making coverage or payment determinations and the development of codes is independent of the coverage determination process. The mere existence of a code for an item or service does not constitute a determination regarding medical necessity, coverage or payment.

[3] Active LCDs are available at https://www.cms.gov/medicare-coverage-database/overview-and-quick-search.aspx; retired LCDs are available at https://localcoverage.cms.gov/mcd_archive/ (both last visited May 6, 2019). Associated policy articles can be accessed from the same pages.

be denied as not medically reasonable and necessary if those two "basic coverage criteria" are not present.

Moreover, the 2017-revision refers to an associated policy article, which contains non-medical necessity provisions applicable to glucose monitors. This policy article states:

> Effective for claims with dates of service on or after January 12, 2017, Medicare covers therapeutic CGM devices under the DME benefit. CGM devices covered by Medicare are defined in CMS Ruling 1682R as therapeutic CGM. CGM devices that do not meet the definition of a therapeutic CGM as defined in CMS Ruling 1682R will be denied as non-covered (no benefit).

Policy Article A52464 (Jan. 12, 2017).

## BACKGROUND

1. CGM

In order to manage diabetes, individuals need to test their levels of blood glucose at varying intervals and determine what treatment in terms of diet and/or insulin is appropriate. For those who need to test frequently, home blood glucose monitors may "enable certain patients to better control their blood glucose levels by frequently checking and appropriately contacting their attending physician for advice and treatment." NCD 40.2. These meters use blood drops placed by the patient on specially treated reagent strips to measure color changes and report blood glucose levels. *Id.*

A CGM does not measure blood glucose at all; rather, it estimates, on a continuous basis, the level of glucose in "interstitial" fluid. A CGM has three basic components: a disposable sensor, placed under the skin, that generates an electrical signal in response to the amount of interstitial glucose present and converts that signal into a glucose measurement; a transmitter to which the sensor's information is relayed; and a receiver (or monitor) that is wirelessly connected to the transmitter and receives the interstitial glucose measurement from the transmitter and displays it to the user. If the glucose levels are high or low, depending on the brand/model, a user may be required to confirm those levels with a finger-stick before taking appropriate action.

Individuals who face daily challenges in managing glycemic levels and trying to avoid hypoglycemic and hyperglycemic episodes may benefit from the use of continuous glucose monitoring. Because continuous access to the blood is impractical, CGMs may provide such individuals with notice to test when levels appear problematic, as well as compiling data on glucose levels over time. However, until recently (as explained later in

relation to the 2017 Ruling), treatment actions could not be based on CGM readings without direct blood testing.

2. The beneficiary's claims

At issue here is Medicare coverage of a MiniMed 630G system with Smartguard received on December 13, 2016, and disposable sensors (code A9276) received on November 16, 2017, and May 15, 2018. ALJ Decision (Dec.) 1-8048536100 (Dates of Service: December 13, 2016, November 16, 2017); ALJ Dec. No. 1-8048583213 (Date of Service: May 15, 2018). Initially and on redetermination, the Medicare contractor denied the beneficiary's claims. Exh. 1 at 19-26.[4] On reconsideration, the Qualified Independent Contractor (QIC) agreed that the CGM and sensors at issue were not covered by Medicare. The QIC specified that the sensors were considered precautionary equipment, and, as such, they were excluded from the DME benefit. Exh. 1 at 1-4. The contractor and the QIC both found the beneficiary responsible for the non-covered charges. *Id.* at 5, 20.

Following a hearing, the ALJ concluded that the CGM and the sensors at issue were denied as excluded from Medicare coverage. ALJ Dec. 1-8048536100 at 1, 9-10; ALJ Dec. No. 1-8048583213 at 1, 9-10. In both cases, the ALJ found that CMS Ruling 1682-R precluded coverage for the beneficiary's CGM. *Id.* at 9-10.

Before the Council, the beneficiary contends that the ALJ failed to consider district court decisions in *Whitcomb v. Hargan*, *Bloom v. Hargan*, and *Lewis v. Azar*. Exh. MAC-1 at 2-3. According to the beneficiary, these decisions are directly on point, and they deem CGM to be DME under the relevant statute and regulations. *Id.* The beneficiary also argues that the CMS Ruling 1682-R directs a finding that her CGM is covered DME. *Id.* at 2-4.

### DISCUSSION

As a preliminary matter, we address the appellant's argument that the Secretary is barred by collateral estoppel from re-litigating the issue in this case. *See* Exh. MAC-1 at 2-3. Collateral estoppel is an affirmative defense generally pleaded by defendants in civil actions, and is not applicable in administrative appeals, as in the case here. More importantly, under Medicare regulations, both ALJs and the Council conduct *de novo* hearings and are required to hold *de novo* considerations of the facts and laws. *See* 42 C.F.R. §§ 405.1000, 405.1100. Therefore, prior ALJ decisions, and non-precedential Council and district court decisions are not binding on any subsequent decision issued by an ALJ or the Council.

---

[4] Unless otherwise specified, all citations are from case 1-8048583213.

After carefully reviewing the record, including the beneficiary's request for review and the arguments raised at the hearing, the Council finds that Medicare does not cover the CGM and sensors at issue here.

*Coverage*

We note that the beneficiary's individual medical condition is not at issue in this case. Before any question can arise of whether an item of DME may be reasonable and necessary for medical treatment under particular conditions, or whether an individual beneficiary's medical condition has been shown to meet those conditions, a particular device must meet the definition of DME.

The Council does not question the beneficiary's medical condition, the judgment of her doctor, or the utility of the CGM to her. However, as explained below, we find that the particular system for which the beneficiary requests coverage, a Medtronic MiniMed system with Smartguard, is not DME and, therefore, does not fall within a covered benefit category.[5]

> 1. CMS has consistently interpreted the definition of DME as excluding CGMs not approved for therapeutic use.

We begin our analysis with the principle underlying CMS's treatment of CGMs, *i.e.*, that DME must be "primarily and customarily used to serve a medical purpose." 42 C.F.R § 414.202. CMS has concluded that some devices that may be useful to patients, and may provide reassurance or guidance or backup in various ways, may nevertheless not constitute DME serving a medical purpose. The MBPM provides some examples of equipment that is "presumptively nonmedical" such as equipment that serves "comfort or convenience functions," "physical fitness equipment (such as an exercycle)," or "precautionary-type equipment (such as preset portable oxygen units)." MBPM, Ch. 15, § 110.1(B)(2).[6] Such equipment is not DME, even if it may have "some remote medically related use." *Id.*; *see also* NCD 280.1 (explaining that preset, as opposed to adjustable, oxygen units are not DME because they are "precautionary equipment; essentially not therapeutic in nature."

Where regulatory language is subject to more than one interpretation, the agency invested with expertise in the subject matter is entitled to apply a reasonable reading, so long as it is a permissible construction of the statutory regime. *See, e.g., Select Specialty Hosp. of*

---

[5] We note that CMS has proposed a rule to expand the classification CGM systems as DME under Medicare Part B. *See* 85 Fed. Reg. at 70358, 70398-04 (Nov. 4, 2020). The new classification, if made effective, would replace CMS-1682-R and take effect on April 1, 2021. *Id.* at 70398, 70401.

[6] Other devices are identified in the MBPM as presumptively medical, including respirators, wheelchairs, and hospital beds. *Id.* at § 110.1(B)(1). In other cases, information may need to be developed to determine into which category a device falls. *Id.* at §110.1.

7

*Atlanta v. Thompson,* 292 F.Supp.2d 57, 64 (D.D.C. 2003) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984)). In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* the Supreme Court established that, if Congress has not "directly spoken to the precise question at issue," then courts "must defer to a 'permissible' construction of the statute by the agency." *Chevron,* 467 U.S. 837, 843 (1984).

Such deference is particularly appropriate where the statutory and regulatory scheme most depends on agency expertise. As the District Court in Maryland has explained, "deference to the Secretary's interpretations of Medicare regulations is 'all the more warranted,' because Medicare 'is a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Almy v. Sebelius,* 749 F.Supp.2d 315, 324 (D. Md. 2010) (quoting *Dist. Mem'l Hosp. of Southwestern N.C. v. Thompson,* 364 F.3d 513, 518 (4th Cir.2004); *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512 (1994)). "Courts consistently defer to the Secretary in recognition of her broad statutory authority over Medicare coverage matters . . . ." *Almy* at 324 n.2 (citing *Heckler v. Ringer,* 466 U.S. 602, 617 (1984)).

We note that at least two courts appear to have substituted an interpretation of the phrase "primarily and customarily used to serve a medical purpose" as merely meaning that a device does not have an obvious purpose that is unrelated to health. *See, e.g., Whitcomb v. Hargan,* Civ. No. 17-CV-14, slip. op. at 11 (October 26, 2017) (DME definition is "clear on its face" in that a "device's primary and customary purpose must be medical as opposed to non-medical."); *Bloom v. Azar,* Civ. No. 5:16-CV-121, slip. op. at 19 (January 29, 2018). We disagree. If this requirement merely meant that DME devices must have health-related uses, there would be no point to the further regulatory requirement that a device "generally is not useful to an individual in the absence of an illness or injury." 42 C.F.R. § 414.202. Regulatory language should be read in a manner that gives meaning and effect to all its terms. We conclude that CMS reasonably and within its authority interpreted the regulatory definition of DME to mean that CGM devices must essentially serve or add to therapeutic measures rather than merely be of some medical or health-related use.

We also note that at least one court takes issue with the characterization of CGMs as "precautionary" devices. *See Lewis v. Azar,* Civ. No. 15-13530, slip. op. at 8-9 (April 5, 2018). However, CMS has expressed an interpretation of the definition of DME as limited to those CGM devices which are suitable for direct determination of treatment actions. That interpretation was embodied in policy articles explaining that such CGMs (the only ones available at the time of issuance and the kind the beneficiary has used) were not DME, as they were "precautionary." *See* Article A52464 (Effective Jan. 12, 2017) (coverage based on "therapeutic" status of CGM). While "precautionary" may be a less than felicitous term in this context, the meaning is not unreasonable. Oxygen units,

like glucose monitors, are unlikely to be used in the absence of disease. Preset portable oxygen units may provide additional mobility and convenience which may, in some instances, be very important to a patient, but they do not add any treatment modality or function because they cannot be adjusted to respond to treatment needs. CGM systems may provide information, including alerts, about blood sugar fluctuations, but they similarly do not add any treatment modality or function so long as the patient is required to return to blood glucose measures to make treatment decisions. Where an individual must still use another device to accomplish the medical purpose at issue (i.e., measuring the glucose in the individual's blood), the device is essentially used as an additional precaution, but not for the primary medical purpose.

    2. The CMS Ruling does not support coverage; rather, it bolsters the Council's conclusions here.

We disagree with the beneficiary's contention that CMS Ruling 1682-R, which was issued after the date the CGM was provided, warrants coverage in this case. On January 12, 2017, CMS published Ruling 1682-R, which explains in detail Medicare's coverage policy for CGMs and ancillary equipment. The 2017 Ruling expressly continues to recognize that "Medicare does not cover CGMs approved by the FDA for use as adjunctive devices to complement, not replace, information obtained from blood glucose monitors." CMS Ruling 1682-R at 6-7. CMS again explained that, in its view, "such devices are not used for making diabetic treatment decisions, such as changing one's diet or insulin dosage based solely on the readings of the CGM, and therefore, have not been covered under Medicare because they are not considered to serve the medical purpose of making diabetic treatment decisions." *Id.* at 7 (CGM devices of this type are referred to as "non-therapeutic").

The change which CMS Ruling 1682-R reflects is that the FDA newly approved a subset of CGM devices as capable of being used to determine treatment without blood testing for a glucose reading, in other words for "replacement of blood glucose monitors for diabetic treatment decisions." *Id.* at 8 (CGM monitors of this type are referred to as "therapeutic."). We conclude that CMS Ruling 1682-R reinforces CMS's consistent interpretation of the definition of DME to mean that only CGM devices serving to provide or guide therapy directly are understood to be primarily and customarily used to serve a medical purpose under Medicare.

Moreover, the FDA has not approved the beneficiary's CGM system, a Medtronic Minimed 630G with Smartguard as a replacement for a blood glucose monitor. *See* Exh. 6 at 5 (beneficiary submitted evidence of FDA approval stating that the system is not intended to be used directly for making therapy adjustments). Thus, the CGM at issue is not DME under the CMS ruling. Finally, as is the case here, where the items at issue are supplies to be used with equipment that is not classified as DME, there is no Medicare

13

benefit. Policy Article A52464. Thus, we agree with the ALJ that Medicare does not cover the sensors at issue for use with a Medtronic Minimed CGM.

*Financial Responsibility*

We note that section 1879 of the Act limits the liability of a beneficiary in certain cases where coverage for an item or service is denied under section 1862(a)(1)(A) of the Act. However, in this case, coverage is denied because the items at issue do not meet the definition of DME set forth in section 1861(n) of the Act. Therefore, section 1879's limitation on liability provisions do not apply in this case. *See* Medicare Claims Processing Manual, CMS Pub. 100-04, Ch. 30, § 20.2.2 (Section 1879 does not apply to "technical denials," such as cases where an item does not meet the definition of DME.). Accordingly, nothing in section 1879 of the Act precludes the supplier from billing the beneficiary for the non-covered items in this case.

## DECISION

The ALJ's decision is adopted. Medicare does not cover the CGM and sensors at issue here. The beneficiary is financially responsible for the non-covered items.

**MEDICARE APPEALS COUNCIL**

Debbie K. Nobleman
Administrative Appeals Judge

Date: February 26, 2021