# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMY OLSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:20-cv-374 (SMJ) |
| XAVIER BECERRA, in his official | ) |
| capacity as Secretary of Health and | ) |
| Human Services, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

# INTRODUCTION

As the prevailing party in this case, Plaintiff now seeks an award of attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. As relevant here, EAJA authorizes a fee award against the federal government in two provisions. Under § 2412(d), the Court may "award . . . fees to a prevailing party in a suit against the United States unless the government's position was substantially justified," *United States v. Marolf*, 277 F.3d 1156, 1159 (9th Cir. 2002), at an hourly rate established by statute, *see* 28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff does not seek such an award here.

Under the common law as incorporated by § 2412(b), "a court may assess attorneys' fees against the government if it has acted in bad faith." *Ibrahim v. DHS*, 912 F.3d 1147, 1180 (9th Cir. 2019) (en banc) (quotation omitted). Unlike standard EAJA fees, bad-faith fees may be awarded at counsel's market rate. *See Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990). But as another district court has correctly concluded, *see Zieroth v. Azar*, 2020 WL 7075629, at *2–*3 (N.D. Cal. Dec. 3, 2020), the government's litigating position here does not approach the "high threshold" for an award of bad-faith fees, *see Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).

Because Plaintiff is not entitled to fees under § 2412(b), and does not seek fees under § 2412(d), his motion should be denied.

## BACKGROUND

Because it is relevant to Plaintiff's argument on this motion, the Secretary provides the following background on two other cases in which Plaintiff's counsel has litigated the same question about Medicare coverage for continuous glucose monitors. The first was filed in December 2018 as a putative class action in the District of Columbia district court. *See Lewis v. Becerra*, Case No. 18-cv-2929 (D.D.C.). Class discovery in the *Lewis* case closed on March 9, 2020. *See* Order, ECF No. 57. Throughout that period, Plaintiff's counsel pressed the *Lewis* court to allow summary judgment briefing on the merits before deciding the issue of class certification. *See, e.g.*, Meet & Confer Statement at 2, ECF No. 25 (June 12, 2019) ("Plaintiffs recommend that briefing on the underlying merits proceed without awaiting decision on either Defendants' motion to dismiss or class certification."); Pls.' Statement at 8, ECF No. 45 (Oct. 23, 2019) ("Plaintiffs have been ready to file a motion for summary judgment . . . since June 14, 2019 . . . . In order to advance this case, Plaintiffs believe that briefing on this issue should begin without delay."); Tr. of Feb. 24, 2020 Conf. at 32:15–19, ECF No. 62 ("[S]ince June of last year the first time we met I said I'm prepared to move for summary judgment on the merits today. I've been ready to move for summary judgment since the first time we came before Your Honor . . . ."). The Secretary opposed the entry of a schedule that would

enable "one-way intervention," in which class members can choose whether to be bound by a court's decision after learning how the court has decided.

While that procedural dispute was unfolding, Plaintiff filed his complaint in the instant case in the District of Columbia. ECF No. 1 (Dec. 23, 2019). Plaintiff designated his case as related to the *Lewis* putative class action, *see* ECF No. 1-5, ensuring that it would be assigned to the judge hearing that case. And Plaintiff filed a simultaneous motion for summary judgment. ECF No. 2. Without speculating on Plaintiff's motives, the Secretary notes that his motion placed before the court the exact merits issue on which it had declined to entertain briefing in *Lewis*. Venue in the District of Columbia was not proper in this case, as Plaintiff later admitted. *See* ECF No. 12 at 2. The Secretary moved to dismiss on that basis, and did not object to the transfer of venue to this district.

The second case was filed in the Northern District of California. *See Zieroth v. Azar*, Case No. 20-cv-172 (N.D. Cal. filed Jan. 8, 2020). That case presented the same substantive issue as this one, and the *Zieroth* court similarly found for the plaintiff before it. *See Zieroth v. Azar*, 2020 WL 5642614 (N.D. Cal. Sept. 22, 2020). The plaintiff then filed a motion for attorneys' fees, arguing—as Plaintiff has here, and for substantially similar reasons—that such fees were justified under the bad-faith standard incorporated into 28 U.S.C. § 2412(b). The plaintiff also argued—in the alternative, and as Plaintiff has conspicuously chosen not to argue here—that a

3

fee award was justified under 28 U.S.C. § 2412(d). The court found that a fee award under § 2412(b) was not justified, and awarded fees under § 2412(d) instead. *Zieroth*, 2020 WL 7075629 at *2.

## ARGUMENT

**A.    The Secretary acted in good faith.**

Under the common law as incorporated by EAJA, 28 U.S.C. § 2412(b), "a court may assess attorneys' fees against the government if it has acted in bad faith." *Ibrahim*, 912 F.3d at 1180 (quotation omitted). Unlike standard EAJA fees, bad-faith fees may be awarded at counsel's market rate. *See Brown*, 916 F.2d at 497. But "[t]he bad faith requirement sets a high threshold" for the award of such fees. *Primus*, 115 F.3d at 649; *see Fink v. Gomez*, 239 F.3d 989, 991–95 (9th Cir. 2001). And it is the moving party's burden to demonstrate that the government's conduct crossed that threshold. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015).

Plaintiff contends that the Secretary's position in this case was sanctionably "frivolous." Mot. at 8; *see Ibrahim*, 912 F.3d at 1180; *Primus*, 115 F.3d at 649. A legal position is frivolous if it is "foreclosed by binding precedent" or "obviously wrong." *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1183 (9th Cir. 2003) (quotation omitted). No binding precedent bars the Secretary's position, so Plaintiff is left to argue that it is obviously wrong. The *Zieroth* court correctly

4

rejected that argument. 2020 WL 7075629 at *2 ("[T]he Court finds the Secretary's position was not wholly lacking in support.").

As this Court is aware, the Secretary's position is that continuous glucose monitors are only covered as durable medical equipment by Medicare Part B if they are accurate enough to guide treatment decisions. CMS Ruling 1682-R at 8 (Jan 12, 2017), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Rulings/Downloads/CMS1682R.pdf. Less accurate devices, whose readings must be confirmed by using a blood glucose monitor, are not covered under the Secretary's position. *Id.* at 15. To begin with, this is not a frivolous distinction. There are more accurate and less accurate CGMs on the market, and it is entirely reasonable for the Secretary to encourage the use of the more accurate devices. As the Secretary suggested in summary judgment briefing, this might well have been accomplished through the establishment of quality standards under 42 U.S.C. § 1395m(a)(20). But the Secretary has instead drawn this reasonable distinction through an interpretation of the Medicare statute and its implementing regulations.

The statutory definition of durable medical equipment, codified at 42 U.S.C. § 1395x(n), "includes iron lungs, oxygen tents, hospital beds, and wheelchairs . . . used in the patient's home," as well as "blood-testing strips and blood glucose monitors for individuals with diabetes" among other specified items. (As the

5

Secretary explained in his cross-motion, CGMs are not "blood glucose monitors" within the meaning of the statute.) The regulatory definition requires that a device be "primarily and customarily used to serve a medical purpose." 42 C.F.R. § 414.202. The Secretary's position is that the "medical purpose" of a CGM is to enable a beneficiary to make treatment decisions, and that less-accurate CGMs do not serve that medical purpose. *See* CMS Ruling 1682-R at 9 ("The medically necessary function of a glucose monitor is to inform the patient about their glucose level so that they can make diabetes treatment decisions such as changing their diet or insulin dosage."). The Secretary has sometimes described the less-accurate devices that do not serve this medical purpose as "adjunctive" or "precautionary." *See* CMS Ruling 1682-R at 7, 14. But the core of the Secretary's position is that certain CGMs do not effectively serve the medical purpose of that device. This is not a frivolous view.

Nonetheless, as Plaintiff notes, the Secretary's position has now been rejected by five district courts, including this one. In three earlier cases, plaintiffs did not suggest that the Secretary's position was frivolous—instead, they argued that Parrish Law Firm attorneys possessed a particular expertise entitling them to compensation at their full market rate as a "special factor" enhancement under 28 U.S.C. § 2412(d)(2)(A). Courts have sometimes accepted that argument for Mr. Pistorino's colleague Debra Parrish, who did not appear in this case, but the only court to

consider the question as to Mr. Pistorino found that he does not possess "distinctive knowledge or specialized skill" justifying such a rate enhancement.  Order on Motion for EAJA Fees and Costs at 15, *Bloom v. Azar*, No. 5:16-cv-121, ECF No. 80 (D. Vt. Jan. 16, 2019).  In this case, as in those, Plaintiff seeks fees at counsel's market rate.  But instead of arguing for a "special factor" enhancement, Plaintiff suggests frivolousness.

The Secretary's position here is, substantively, no more or less frivolous than it was in those earlier cases.  Yet Plaintiff argues that the accumulating weight of those decisions justifies a finding of frivolousness.  The Supreme Court has said that although "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified . . . a string of losses can be indicative."  *Pierce v. Underwood*, 487 U.S. 552, 568 (1988); *see Meinhold v. U.S. Dep't of Defense*, 123 F.3d 1275, 1284 (9th Cir. 1997).  But even if a "string of losses" sometimes indicates that a position may not be *substantially justified*, it certainly does not establish that the position is *frivolous*.  Plaintiff offers no authority to the contrary.  *Cf. Brown v. Sullivan*, 916 F.3d 492, 496 (9th Cir. 1990) (explaining that the "cumulative effect" of actions in one case can support a finding of bad faith).

The Secretary's view—that the medical purpose of a CGM is to indicate a need for treatment, and that certain CGMs do not serve that purpose—has been consistent, as the *Zieroth* court correctly recognized.  2020 WL 7075629 at *3

("[T]he Court finds the Secretary's position has not changed."). And it does not begin to approach the "high threshold" for a finding of bad faith. *Primus*, 115 F.3d at 649.

Nor does the Secretary's decision to challenge the concededly improper venue in the District of Columbia justify a finding of bad faith. Plaintiff suggests that "the Secretary's objection to venue in his home district" was "designed solely to maximize the judicial resources required to resolve this matter and the delay associated therewith." Mot. at 8. To the contrary, the Secretary's objection was substantially driven by the concern that this case could have collateral impacts (whether intended or otherwise) on the putative class action that Plaintiff's counsel was simultaneously litigating before the same judge to which this case was assigned when Plaintiff designated it as a related matter.

Nevertheless, the Secretary is conscious of the fact that several district courts have now ruled against him, and is currently reconsidering his position on whether devices such as the continuous glucose monitor at issue here should be considered durable medical equipment within the meaning of the Medicare statute and regulations. He recently published a notice of proposed rulemaking which would, if finalized, "classify CGM systems . . . as DME" whether or not they can be used to make treatment decisions on the basis of their readings alone. 85 Fed. Reg. 70,358, 70,403–04 (Nov. 4, 2020). The comment period closed on January 4, 2021.

### B. Plaintiff does not seek fees under 28 U.S.C. § 2412(d).

EAJA also "provides for an award of fees to a prevailing party in a suit against the United States unless the government's position was substantially justified." *United States v. Marolf*, 277 F.3d 1156, 1159 (9th Cir. 2002) (citing 28 U.S.C. § 2412(d)(1)). To seek fees under § 2412(d), however, a plaintiff must "allege that the position of the United States was not substantially justified." *Id.* § 2412(d)(1)(B). This is "an allegation or pleading requirement." *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). Once the Plaintiff makes the allegation, it becomes the government's burden to show substantial justification. *See Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005). But the allegation is mandatory, and has not been made here (although Plaintiff's counsel has made it on behalf of other clients in similar cases). Because Plaintiff evidently does not seek an award of fees under § 2412(d), no such award should be made.

Nonetheless, the Secretary's position was substantially justified. "Substantially justified means justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Marolf*, 277 F.3d 1159 (quotation omitted). The Secretary's position—that continuous glucose monitors are only covered as durable medical equipment by Medicare Part B if they are accurate enough to guide treatment decisions, *see* CMS Ruling 1682-R at 8—is sufficiently justified to satisfy a reasonable person, for substantially the reasons discussed above.

9

As a matter of policy, the Secretary is well justified in withholding coverage from less accurate CGM devices to provide Medicare beneficiaries with an incentive to choose the more accurate devices, which are covered. The Secretary correctly concluded that less accurate CGMs are not primarily and customarily used to serve the medical purpose of enabling a beneficiary to make treatment decisions. CMS Ruling 1682-R at 9; *see* 42 C.F.R. § 414.202. A reasonable person could be satisfied that this is the medical purpose of CGMs, and that less accurate devices such as the one at issue here therefore were not covered by Medicare Part B. For that reason, the Secretary's position was substantially justified.[1]

## CONCLUSION

Plaintiff's fee petition should be denied.

---

[1] Fees under 28 U.S.C. § 2412(d) are calculated to include the cost-of-living adjustment published on the Ninth Circuit website: $205.25/hour for work performed in 2019, and $207.78/hour for work performed in 2020 or 2021 (as posted today). *See* Statutory Maximum Rates Under the Equal Access to Justice Act, *available at* https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039. But Plaintiff seeks only market fees under § 2412(b), at rates exceeding $1,000/hour for local counsel in the District of Columbia, and in excess of $500/hour for lead counsel.

|  |  |
|---|---|
| | Respectfully submitted, |
| | BRIAN M. BOYNTON<br>Acting Assistant Attorney General |
| | MICHELLE BENNETT<br>Assistant Director, Federal Programs Branch |
| | */s/ James Bickford*<br>JAMES BICKFORD<br>Trial Attorney (N.Y. Bar No. 5163498)<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW<br>Washington, DC 20530<br>James.Bickford@usdoj.gov<br>Telephone: (202) 305-7632<br>Facsimile: (202) 616-8470 |
| | *Counsel for Defendant* |
| Date: April 9, 2021 | |

11